IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMIT SHARMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-1250 (MN) |
| ) | Related to Superior Court of the State of |
| STEVEN WESLEY, et al., ) | Delaware in and for New Castle County |
| ) | C.A. No. N18C-01-091 ALR |
| Defendants. ) | |

## MEMORANDUM OPINION

Amit Sharma, Newark, Delaware – *Pro Se* Plaintiff.

Adria Benner Martinelli, Deputy Attorney General, and Wilson Buckmaster Davis, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware – Counsel for Defendants Jennifer Biddle, Robert Coupe, Delaware Department of Correction, Janet Durkee, Carole Evans, Christopher Klein, Geoffrey Klopp, Michael Merson, Julie Petroff, Perry Phelps, Marc Richman, and Steven Wesley.

July 26, 2019
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

Plaintiff Amit Sharma (Plaintiff"), who appears *pro se*, filed this employment discrimination case in the Superior Court of the State of Delaware in and for New Castle County. Defendants Jennifer Biddle, Robert Coupe, Delaware Department of Correction, Janet Durkee, Carole Evans, Christopher Klein, Geoffrey Klopp, Michael Merson, Julie Petroff, Perry Phelps, Marc Richman, and Steven Wesley removed the case to this Court on August 15, 2018.[1] (D.I. 1). They have filed a motion to dismiss, opposed by Plaintiff.[2] (D.I. 4). The matter is fully briefed.

## I. BACKGROUND

Plaintiff, who is of Indian descent, began his employment with Defendant Delaware Department of Correction ("DOC") on October 19, 2006, and worked as a correctional officer at the Howard R. Young Correctional Institution ("HRYCI"). (D.I. 1 First Amended Complaint ¶¶ 14, 21). After working for seven years, Plaintiff made a hostile work environment claim against co-worker, Gregory Perella ("Perella") followed by a second complaint on July 3, 2014. (*Id.* ¶ 15). On July 7, 2014, several co-workers met, expressed outrage over Plaintiff's complaints about Perella, and vowed to "burn the shift down if Plaintiff [was] promoted to lieutenant." (*Id.* ¶ 16). Plaintiff alleges that former HRYCI Warden Defendant Steven Wesley ("Wesley") was made aware of the issue and did not investigate. (*Id.*). Plaintiff discussed the hostile work environment incidents and group polarization during a July 30, 2014 conflict resolution initial interview with Diversity Coordinator Roy Lawler ("Lawler") and Major D. Bamford ("Bamford"),

---

[1] The Amended Complaint references numerous exhibits, but there are no exhibits attached to it.

[2] The Court takes judicial notice that Defendant Correctional Officers Association of Delaware ("the Union") has not been served and this Court's docket and the State Court docket do not indicate that Plaintiff has taken any steps to effect service upon the Union.

1

and Plaintiff accepted an offer for conflict resolution. (*Id*.). Plaintiff was told that a report would be prepared for Human Resources and that Wesley would be in touch. (*Id*.).

On March 14, 2014, a job opened for lieutenant. Plaintiff applied on March 16, 2014, received his test scores on April 8, 2014, and was interviewed on June 24, 2014. (*Id*. at 18). On July 13, 2014, two promotions were given to non-Indian candidates who ranked first and second. (*Id*. ¶ 19). There was another opening on August 9, 2014, and Wesley used the previous referral list and selected the fourth ranked non-Indiana candidate for promotion. (*Id*. ¶ 20).

Plaintiff was given approved leave and left for the States of India on August 14, 2014, due to a family emergency. (*Id*. ¶ 21). While there, he learned about two additional openings and that Wesley has used the referral list to select two non-Indian candidates ranked third and fifth. (*Id*.). On August 22, 2014, and while in India, Plaintiff requested that Interview Panel Chairperson Staff Lieutenant G. Fahey ("Fahey") provide the interview scores. (*Id*. ¶ 22). As instructed by Human Resources, Union Representative Bryant and Plaintiff requested that Human Resources provide the August 19, 2013 interview score sheet. (*Id*. ¶ 22). Defendant J. Biddle ("Biddle") Human Resources Assistant Director asked the reason for requesting a year-old sergeant interview score sheet and was hesitant to supply it without knowing the reason for the request. (*Id*.). Biddle provided the sergeant score sheet on September 5, 2014. (*Id*. ¶ 23).

On September 7, 2014, Wesley was notified of a computation error in the June 24, 2014 interview score that had lowered Plaintiff's candidacy rank from fourth to sixth. (*Id*. ¶ 24). Plaintiff and Wesley discussed the issue after Plaintiff asked to resubmit the same credentials for lieutenant interviews as sergeants. (*Id*. ¶ 25). Plaintiff alleges that Wesley blamed Plaintiff for not resubmitting the same documents to get the same points and advised Plaintiff that the promotions were in effect, there were no open lieutenant vacancies, and the certification list had

2

expired. (*Id*.). Plaintiff submitted a grievance concerning the unlawful denial of a promotion and alleges that on September 12, 2014, Wesley violated the terms and agreement of the Collective Bargaining Agreement, when he denied Plaintiff's timely grievance as untimely. (*Id*. ¶ 29).

Plaintiff returned to work on September 10, 2014, and learned that a vacancy had existed because a lieutenant was promoted to staff lieutenant using the September 3, 2014 interview. (*Id.* ¶ 26). On September 16, 2014, Plaintiff contacted Wesley regarding the status of his complaints, including one asserting workplace safety and, on September 18, 2014, Plaintiff was informed by Lawler that his "concerns were valid overall" and that "appropriate action has been taken." (*Id*. ¶¶ 30-31). Plaintiff alleges that on September 22, 2014, Defendant Labor Relation Manager Julie Petroff ("Petroff") intervened to invalidate Plaintiff's complaints that Lawler had confirmed overall as valid. (*Id*. ¶ 32). Petroff dismissed Plaintiff's complaints on September 24, 2014. (*Id*. ¶¶ 33-35).

On September 27, 2014, Wesley had the existing vacancy reposted. (*Id*. ¶ 27). Plaintiff alleges that of the six vacancies, Wesley promoted five non-Indian candidates and denied the sixth vacancy to the fourth, but incorrectly ranked as sixth.[3] (*Id*.). On September 27, 2014, Plaintiff reapplied for the lieutenant vacancy, but the vacancy was filled with a non-Indian employee through a lateral transfer without holding interviews. (*Id*. ¶ 28).

On October 29, 2014, Plaintiff contacted former DOC Commissioner R. Coupe ("Coupe") to report retaliation and national origin discrimination. Defendant Bureau Chief Janet Durkee ("Durkee") was made aware of the complaints and Coupe indicated that he would consider a private meeting with Plaintiff after he reviewed the complaint with Durkee. (*Id*. ¶ 36). Plaintiff

---

[3] This relates to Plaintiff's claim there was computation error that lowered his candidate rank from fourth to sixth and, in turn, resulted in the denial of a promotion due to the incorrect ranking of candidates.

alleges there was no follow-up. (*Id*.). Plaintiff filed a complaint with Durkee and Petroff on November 6, 2014, cited national origin discrimination and a violation of conflicts, and requested an investigation of Wesley's recommendation letters and the internal promotion process. (*Id*. at ¶ 37). Durkee did not acknowledge the complaint. (*Id*.).

Plaintiff alleges that on November 7, 2014, Wesley falsely accused Plaintiff of harassing Petroff and gave Plaintiff a direct order to cease and desist communications with her. (*Id.* ¶ 38). Wesley told Union Representative Jay Lee ("Lee") that he was "pissed off at Plaintiff." (*Id*.). Plaintiff attempted to submit an incident report about Wesley's hostile behavior, false accusations, and employment threats and was told by Captain K. Akinbayo ("Akinbayo") that he was "not doing any reports" and Akinbayo notified Wesley. (*Id*. ¶ 39). Plaintiff alleges the denial to complete an incident report violated DOC rules. (*Id*.).

Plaintiff was scheduled to be off for two days and on the first scheduled day, November 10, 2014, he was directed to report to work immediately. (*Id*. ¶ 40). He was served with Wesley's memo for removal from the workplace, psychological fitness for duty evaluation, and disciplinary action. (*Id*. ¶ 40). Plaintiff was directed to go to the administration building to meet with Durkee on November 12, 2014. (*Id*.). On November 12, 2014, Plaintiff met with Durkee, former DOC Commissioner Defendant Perry Phelps ("Phelps"), and Wesley. (*Id*. ¶ 41). At the meeting nothing was discussed except that Durkee gave information to Plaintiff for his required psychological fitness for duty evaluation. (*Id*.). Captain Brian Berggrun ("Berggrun") conducted an investigative interview on November 13, 2014. (*Id*. ¶ 42). Berggrun "did not consider that Plaintiff had followed Wesley's directive to not email complaints to Petroff." (*Id*.).

The fitness for duty evaluation was conducted on November 20, 2014, and Plaintiff was cleared for duty. (*Id*. ¶ 43). Plaintiff reported to the administration building on November 26,

2014, and met with Phelps and Wesley. (*Id*. ¶ 43). Wesley told Plaintiff that since his issues were not psychological, but behavioral, Plaintiff would be disciplined. (*Id*. ¶ 44). Wesley explained that he was disciplining Plaintiff for the officers Plaintiff had harassed over the years and Phelps said, "so you do not say retaliation, it will be warden from a different facility in charge of it." (*Id*.). Plaintiff was advised that he could return to work the next day. (*Id*.). Plaintiff asked Phelps to review the complaints and documents, but he declined stating that the warden falls under his supervision and is a friend and Plaintiff does not think that Phelps is impartial. (*Id*.). Phelps mentioned that Plaintiff could not stop filing complaints against Wesley and that Plaintiff has a distrust in Human Resources findings. (*Id*.). Phelps first offered Plaintiff a voluntary transfer to a different facility and then told Plaintiff that he could hire an attorney or seek assistance from an outside agency to review his complaint without worrying about repercussions. (*Id*.).

Plaintiff report the violations to Delaware Governor J. Markell's office on January 5, 2015. (*Id*. ¶ 45). On February 9, 2015, "Constituent Relations A. Betts" ("Betts") informed Plaintiff that Human Resources had been contacted and considered the matter closed, but the required dismissal of charges memorandum had not been issued. (*Id*. ¶ 46).

Plaintiff applied for a correctional lieutenant position and received eligibility confirmation on January 15, 2015. (*Id*. ¶ 82).[4] Based upon his interpretation of Defendant Bureau Chief Christopher Klein's ("Klein") involuntary transfer memo, Senato denied a request to schedule an interview when he stated, "this agreement will preclude you from working overtime or transferring to any position at Howard R. Young for a period of 2 years." (*Id*.). Plaintiff contacted Wesley, Biddle, and Richman about the interview denial, but they did not acknowledge "the violation or request." (*Id*. ¶ 85).

---

[4]  The First Amended Complaint does not contain a paragraph 83 or 84.

5

When a lieutenancy vacancy at the HRYCI was posted on February 13, 2015, Plaintiff asked Union Representative Corporal C. Addison ("Addison") to inquire about Plaintiff's status. (*Id*. ¶ 47). Plaintiff was told that there was no paperwork, a warden from a different institution was handling it, and if Plaintiff wanted to pursue a promotional opportunity he could. (*Id*.). Plaintiff applied for the lieutenant vacancy on February 21, 2015. (*Id*. ¶ 48). Plaintiff alleges that Wesley learned about a possible grievance on February 25, 2015, and again retaliated against Plaintiff when, on February 26, 2015, he issued a disciplinary report that cited suspension from duty and demotion were under consideration. (*Id*. ¶¶ 49-50). The two penalties automatically disqualify promotional opportunities for two years. (*Id.* ¶ 50).

Plaintiff requested a pre-decision hearing on March 2, 2015. (*Id*. ¶ 51). Plaintiff was sanctioned "six days' paper suspension." (*Id*. at ¶ 53). Wesley issued a final decision that concurred with the suspension, and he threatened Plaintiff's employment. (*Id*. ¶ 54). On April 29, 2015, Klein conducted an appeal of Plaintiff's suspension. (*Id*. ¶ 55). Klein did not find in Plaintiff's favor and Plaintiff appealed. (*Id*.).

Plaintiff filed a second grievance against Wesley on March 10, 2015, for employment discrimination and retaliation, and Wesley denied the grievance. (*Id*. at ¶ 58). Plaintiff refiled the grievance on March 15, 2015, and alleged that when Wesley held the hearing he focused on justifying his reasons for denying promotions to Plaintiff. (*Id*. ¶ 59). The grievance was denied on March 27, 2015. (*Id*. ¶¶ 60-61). Plaintiff also alleges that Wesley unlawfully denied him promotions in April 2015 and July 2015. (*Id*. ¶¶ 62, 63).

On May 27, 2015, Plaintiff reported a co-worker citing safety concerns, and Plaintiff was reprimanded for filing complaints. (*Id*. ¶¶ 64-66). Plaintiff appeared for a pre-arbitration hearing on July 21, 2015. (*Id*. ¶ 56). The hearing did not take place and it appears that the

grievance was not resolved. (*Id*.). In the meantime, Berggrun investigated the complaint that Plaintiff had harassed Petroff and found that Plaintiff "said a lot of things, none of which include any threats or harm or danger" and in October 2015 Biddle confirmed that Petroff did not feel harassed. (*Id*. ¶ 57).

Also on July 21, 2015, Plaintiff reported Wesley's, Durkee's, and Coupe's alleged unlawful conduct to member of the State Senate Correctional Committee. (*Id*. ¶ 70). On July 23, 2015, Governor Markell emailed executive agencies regarding harassment and discriminatory policies by State employees. (*Id*. ¶ 71). On July 28, 2015, Plaintiff attended an NAACP/IMAC meeting and three ranking HRYCI officers saw him. (*Id*. ¶ 72). The next day, Plaintiff met with Wesley who gave him a removal from the workplace pending disciplinary investigation because "Plaintiff's presence in workplace jeopardizes others' safety or security or the public confidence." (*Id.* ¶ 73). Plaintiff was also notified of an investigation to determine if Plaintiff's complaint to Delaware Senators violated the code of discipline or policies. (*Id*.). Plaintiff's ID was taken from him and he was escorted from the prison. (*Id*.).

Plaintiff then contacted the Governor's office to advise him of the retaliation by Wesley. (*Id*. ¶ 74). Plaintiff met with Defendant Investigator Caption M. Merson ("Merson") who accused Plaintiff of providing false information to Senators about promotions at the HRYCI. (*Id*. ¶ 75). Plaintiff alleges that Merson violated employee disciplinary policies. (*Id.* ¶ 76).

Wesley's employment termination memorandum dated August 19, 2015 was received by Klein's office on August 12, 2015. (*Id*. ¶ 77). On September 2, 2015, Plaintiff met with Klein and Biddle and told Plaintiff that he must either accept a transfer or he would be terminated. (*Id.* ¶ 78). Klein told Plaintiff the decision was based upon Wesley's complaint of a hostile work environment due to complaints filed against Wesley and, since he could not relocate Wesley, he

was making the transfer offer to Plaintiff. (*Id.*). Plaintiff was advised there would be no disciplinary action for his communication with the Senators and Klein did not terminate Plaintiff's employment. (*Id.*).

On September 11, 2015, Biddle forwarded Klein's involuntary transfer letter to the Plummer Community Correctional Center ("PCCC"). (*Id.* ¶ 79). Plaintiff alleges the decision to transfer him violated the Union's collective bargaining agreement which prohibits involuntary transfer. (*Id.*). Plaintiff filed a grievance on September 22, 2015, regarding the transfer. (*Id.* ¶ 80). A hearing was held on October 12, 2015, before Defendant Medical Bureau Chief Marc Richman ("Richman"). (*Id.* ¶ 81). Plaintiff alleges that Richman was unfamiliar with the issues and did not investigate the matter. (*Id.*). On January 5, 2016, Defendant Union President G. Klopp ("Klopp") confirmed that Klein had "deceitfully stated" that the Union had agreed with the involuntary transfer decision. (*Id.* ¶ 79).

On March 28, 2016, Plaintiff contacted Defendant PCCC Warden Carole Evans ("Evans") to explain how the involuntary transfer was retaliatory and that he had concerns over his safety. (*Id.* ¶ 90). Plaintiff called off work on March 29, 2016 for the shift beginning midnight March 30, 2016, and alleges that he was required to submit medical documents in order to resume duty. (*Id.* ¶ 91). Plaintiff alleges that Evans directed Plaintiff to report to PCCC on March 30, 2016 for his next scheduled shift. (*Id.* ¶¶ 90-91). Plaintiff did not report for duty or communicate with the shift commander for shifts on Thursday, March 31, 2016 or Friday, April 1, 2016, because his scheduled days off were Thursday and Friday, returning to work was contingent on attaining and submitting medical documents and, due to the weekend, the first day he could so was on Monday, April 4, 2016. (*Id.* ¶¶ 93, 95).

A pre-termination letter advised Plaintiff that termination of his employment was being considered. (*Id*. ¶ 86). Plaintiff alleges that he was wrongfully terminated and that the pre-termination letter, dated April 5, 2016, did not clarify when he was to return to work. (*Id*. ¶¶ 94, 95). Plaintiff requested documentation for the dismissal decision and a pre-termination hearing was scheduled. (*Id*. ¶¶ 96, 97). On April 7, 2016, Plaintiff's physician advised him not to report to work and on April 11, 2016, Plaintiff asked Biddle where to forward his medical documentation. (*Id*. ¶¶ 101-103). Biddle told Plaintiff that Evans had denied Plaintiff's request for additional leave. (*Id*. ¶ 103). On April 14, 2016, Plaintiff again asked where to submit his medical FMLA documents. (*Id*. ¶ 104).

On April 20, 2016, Plaintiff requested information and documentation supporting dismissal consideration. (*Id*. ¶ 87). On April 22, 2016, Petroff informed Plaintiff that there was no disciplinary package. (*Id*. ¶ 88). Plaintiff alleges Defendants violated DOC policies, the collective bargaining agreement, merit rules, and standard operating procedures because Defendants were required to conduct an investigation and provide a disciplinary package with supporting documents. (*Id*. ¶ 89). Plaintiff asked to hold the hearing at the Administration Building, and on April 27, 2016, Biddle told him it would be held at the CVOP. (*Id*. ¶¶ 97, 98). Plaintiff informed Biddle he would not go to the CVOP to "prevent additional suffering and embarrassment from facing co-workers," and the Union had not confirmed the availability of a representative to accompany. (*Id*. ¶ 97). Plaintiff alleges that representative Shula Reeves did not acknowledge the request for representation. (*Id*. ¶ 101). Plaintiff alleges that the termination letter did not state the reasons for Plaintiff's failure to attend the meeting and that Defendant lied to the EEOC that Plaintiff did not attend the pre-termination hearing. (*Id*. ¶¶ 97, 100).

The First Amended Complaint raises the following counts: Count 1, against Wesley, Lawler, and Petroff for failure to prevent harassment, discrimination, or retaliation; Count 2, national origin discrimination, against Wesley, in violation of Title VII of the Civil Rights Act of 1974, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; Count 3, against Wesley, for retaliation motivated by Plaintiff's protective activity; Count 4 defamation against Berggrun; Count 5 against Coupe, Durkee, and Wesley for intentional infliction of emotional distress;[5] Second Count 5 against Defendant covered employer (presumably the DOC) and Biddle, for violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA");[6] and Count 6, breach of contract against the Union. Plaintiff seeks reinstatement to his position and compensatory and punitive damages.

Moving defendants seek dismissal on the grounds that: (1) Plaintiff has failed to demonstrate he exhausted his administrative remedies as is required to raise Title VII claims; (2) the defamation claim is raised against a non-party, fails to state a claim, and is time-barred; (3) the intentional infliction of emotional distress is time-barred and barred by the exclusive provisions of Delaware's Workers' Compensation Act; and (4) the First Amended Complaint fails to raise an FMLA claim or retaliation under the FMLA.

## II.  **LEGAL STANDARD**

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his First Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal

---

[5]   Count 5 also refers to breach of duty, gross negligence, aiding and abetting, the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, et seq., and 5 C.F.R. Part 339 medical qualification determination. (*Id.* ¶ 126).

[6]   The First Amended Complaint has a numbering error and contains two Count Fives. For the sake of clarity, the Court will refer to the first Count 5 as Count 5 and the second Count 5 as Second Count 5.

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id*. at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated

into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

### A. Title VII - Counts 1, 2, and 3; ADA - Count 5

Defendants move to dismiss Counts 1, 2, and 3 for Plaintiff's failure to exhaust his administrative remedies as is required for Title VII claims. The Court observes that Count 1 does not reference Title VII although it appears to raise Title VII employment discrimination claims. Count 2 references Title VII and 42 U.S.C. §§ 1981 and 1983 claims. The §§ 1981 and 1983 claims will be discussed below. Count 3 alleges retaliation and, similar to Count 1, does not reference a statute but appears to refer to retaliation motivated by the exercise of Plaintiff's protected activities. Count 5 references the ADA in connection with Plaintiff's intentional infliction of emotional distress claim.

As Defendants correctly note, Plaintiff has not provided a notice of suit rights from the EEOC. Under Title VII and the ADA, a plaintiff must exhaust his administrative remedies before filing a civil action in federal court. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117; *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (Title VII); *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999) (ADA claim). The administrative prerequisites as provided in 42 U.S.C. § 2000e-5, require a plaintiff to first lodge a complaint with either the EEOC or the equivalent state agency responsible for investigating claims of employment discrimination, in Delaware the DDOL. *See* 42 U.S.C. § 2000e-5(e). If the EEOC or equivalent state agency determines not to pursue a plaintiff's claims and issues a right-to-sue letter, only then may a plaintiff file suit in court. *See* 42 U.S.C. § 2000e-5(f)(1). Title VII provides that a complainant has ninety days from the receipt of an EEOC right to sue letter to file an action in court. *See*

42 U.S.C. § 2000e-5(f)(1); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999). Failure to exhaust administrative remedies is an affirmative defense and under Third Circuit precedent is grounds for dismissal on a Rule 12(b)(6) motion. *See Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013).

Plaintiff has failed to provide a notice of suit rights or a right to sue letter as required to commence a Title VII or ADA action in federal court. Accordingly, the Court will grant Defendants' motion to dismiss the Title VII claims for Plaintiff's failure to exhaust his administrative remedies. It will also dismiss, *sua sponte*, the ADA claims on the same grounds to the extent Plaintiff intended to raise an ADA claim.

### B. 42 U.S.C. § 1981 and 42 U.S.C. § 1983 - Count 2

Plaintiff also invokes 42 U.S.C. § 1981 and 42 U.S.C. § 1983 in his employment discrimination claims. Plaintiff may not rely on either statute. First, § 1981 does not provide Plaintiff with a private right of action against Defendants. *McGovern v. City of Philadelphia,* 554 F.3d 114, 116 (3d Cir. 2009). Second, employment-related claims for racial or national origin discrimination may not be brought under § 1983. *William v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017) (allowing a Title VII claim to be brought under § 1983 "would thwart Congress's [sic] carefully crafted administrative scheme."). Therefore, the Court will dismiss the claims raised under §§ 1981 and 1983.

### C. Individual Defendants, Title VII and ADA

The employment discrimination claims in Counts 1, 2, 3, and 5 are raised against individual defendants and not Plaintiff's former employer, the DOC. Title VII and the ADA do not provide for individual liability. The law in this area is clear, and has been for some time, that individual employees are not liable under Title VII. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir.

2002); *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001). In addition, the law is well-established in the Third Circuit that parties cannot be held liable in their individual capacities under the ADA. *See Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (no individual liability under the ADA). Accordingly, the Court will dismiss the Title VII and ADA claims as they are raised against individual defendants, and not Plaintiff's former employer.

### D. Defamation - Count 4

Count 4 raises a defamation claim against Berggrun. The claim fails for at least two reasons. First, Berggrun is not a named defendant. Second, the only allegation raised against Berggrun is that he conducted an investigative interview on November 13, 2014. (D.I. 1 ¶ 42). At that time he told Plaintiff that he "did not consider that Plaintiff had followed Wesley's directive to not email complaints to Petroff." (*Id.*).

Additionally, Plaintiff commenced this action in the Delaware Superior Court on January 10, 2018. Berggrun's alleged defamatory conduct took place on November 13, 2014. In Delaware, defamation claims are subject to a two-year statute of limitations period. *See* 10 Del. C. § 8119. The claim is clearly time-barred. Accordingly, the Court will grant Defendants' motion to dismiss Count 4.

### E. Intentional Infliction of Emotional Distress - Count 5

Count 5 raises an intentional infliction of emotional distress claim against Coupe, Durkee, and Wesley for removing Plaintiff from the workplace from November 10, 2014 until November 24, 2015 pending a fitness for duty evaluation. Defendants seek dismissal on the grounds that the claim is not only time-barred, but also barred by Delaware's Workers' Compensation Act.

Like the defamation claim, the statute of limitations for an intentional infliction of emotional distress is subject to a two-year statute of limitations period. *See* 10 Del. C. § 8119. Here, the conduct complained of ended on November 24, 2015, yet Plaintiff did not commence this action until January 10, 2018. It is clear that the claim is time-barred. In addition, it is well-settled that an employee's common law claim against an employer for intentional infliction of emotional distress is barred by the exclusivity provisions of Delaware's Workers' Compensation Act. *See Limehouse v. Steak & Ale Rest. Corp.*, 850 A.2d 301, 2004 WL 1280400 (Del. June 7, 2004) (table).

Accordingly, the Court will grant Defendants' motion to dismiss Count 5.

### F. FMLA - Second Count 5

Second Count 5 alleges violations of the FMLA for interference of Plaintiff's rights under the FMLA and retaliation. Defendants move to dismiss Second Count 5 for failure to state a claim upon which relief may be granted.

The FMLA prohibits employers from interfering with an employee's rights under the statute to take leave and return from leave and contains two distinct provisions protecting those rights. *See id*. § 2615(a). An "interference" claim arises from the provision that makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. *Id*. § 2615(a)(1); *Hayduk v. City of Johnstown*, 386 F. App'x 55, 59 (3d Cir. 2010). Also, the FMLA prohibits an employer from discriminating or retaliating against an employee for exercising or attempting to exercise FMLA rights. *See* 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.200(c). A claim under the latter provision is referred to as a "retaliation" or "discrimination" claim. *Hayduk*, 386 F. App'x at 59.

An interference claim requires Plaintiff to plead that: (1) he was entitled to benefits under the FMLA and (2) his employer illegitimately prevented him from obtaining those benefits. *Sarnowski v. Air Brooke Limousine, Inc*., 510 F.3d 398, 401 (3d Cir. 2007). For a retaliation claim under the FMLA, Plaintiff must allege that: (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his invocation of his rights. *See Erdman v. Nationwide Ins. Co*., 582 F.3d 500, 508-09 (3d Cir. 2009).

As noted, Plaintiff alleges "unlawful interference" and "retaliatory interference." It is not clear, but it seems that Plaintiff raises the claims against his employer and against Biddle for interference. Plaintiff alleges that he was eligible for FMLA, he exercised his right to take qualifying FMLA leave, he suffered an adverse employment due to Biddle's interference with the FMLA, Biddle refused to acknowledge, accept, and process Plaintiff's medical and FMLA paperwork, and Biddle's retaliatory interference was a substantial factor in his wrongful termination. (D.I. 1 ¶¶ 134-139).

The Second Count 5 is not properly pled. With regard to an interference claim, liberally construing the First Amended Complaint, Plaintiff appears to alleges that he was entitled to benefits under the FMLA. The First Amended Complaint does not, however, adequately allege that Biddle refused to authorize FMLA or discouraged Plaintiff from applying for FMLA. At most the First Amended Complaint alleges that Biddle responded to Plaintiff's email and told him that someone would be in touch with him. Finally, there are no allegations that Plaintiff actually submitted documents to support an FMLA request.

With regard to a retaliation claim, Plaintiff seems to allege that he contacted Biddle about submitting FMLA medical records after he received his pre-termination or termination letter.

16

Logic suggests that Plaintiff could not have been terminated for requesting family medical leave if he received a pre-termination or termination letter prior to requesting it.

Second Count 5 fails to adequately allege FMLA claims. Therefore, Defendants' motion to dismiss it will be granted.

### G. Leave to Amend

Plaintiff proceeds *pro se*. Since it is possible that he may be able to allege Title VII claims or an ADA claim upon a showing that he has exhausted his administrative remedies and FMLA claims against a defendant or defendants, he will be given leave to file a Second Amended Complaint. Should Plaintiff opt to amend the Title VII and ADA claims he will be required to attach to the Second Amended Complaint, and submit to the Court, a right to sue letter or a notice of suit rights as well as any charges of discrimination relevant to this case.

## IV. SHOW CAUSE

Count 6 raises a claim against the Union. It has come to the Court's attention that the Union has never been served. Nor does it appear that Plaintiff has taken any steps to serve the Union. Therefore, Plaintiff will be ordered to show cause why the Union should not be dismissed for failure to timely serve it under Delaware Superior Court Rules or the Federal Rules of Civil Procedure.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss the First Amended Complaint. (D.I. 4). Plaintiff will be given leave file a Second Amended Complaint as discussed above.

An appropriate order will be entered.